**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-01-249 (1) |
| | § | C.A. No. C-05-181 |
| JESUS BENITEZ-TORRES | § | |
| | § | |
| Defendant-Movant. | § | |

**ORDER DISMISSING MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE, AND ORDER
DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Defendant Jesus Benitez-Torres' ("Torres") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 166).[1] Approximately one month after filing his motion, he filed a supporting memorandum. (D.E. 168). The government has filed a response and answer, in which it argues that Torres' motion should be dismissed because it is untimely and because he is not entitled to tolling. (D.E. 169). The government did not initially respond to Torres' substantive grounds for relief. On September 6, 2005, the Court ordered the government to provide a supplemental response, which was filed on September 19, 2005. (D.E. 170, 171). Torres filed a reply brief on October 26, 2005, and the Court has considered both it and a later-filed reply from Torres. (D.E. 174, 175).

For the reasons set forth below, the Court GRANTS the government's motion to dismiss and DISMISSES Torres' motion, both because it is time-barred and because his substantive claims are lacking in merit. Additionally, the Court DENIES Torres a Certificate of Appealability.

---

[1] Dockets entries refer to the criminal case, C-01-cr-249.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

### A.   Factual Background[2]

Torres was the driver of a Lincoln Towncar entering the Falfurrias, Texas Border Patrol Checkpoint on July 26, 2001. There were also four passengers in the vehicle. Jesika Garcia was in the front seat and two adults and Torres' two-year old daughter were in the back seat. During an immigration interview in the primary inspection area, all adult occupants reported that they were United States citizens. When the agent asked one of the backseat passengers where she was born, however, she stated, "yes." Due to this response, the agent requested that Torres move the vehicle into the secondary inspection area.

Once in the secondary inspection area, a records check conducted on Torres revealed that he had been previously deported on July 14, 2000, and that he had a history of immigration violations. Torres was found to be in the United States illegally, and so was arrested and handcuffed to a table inside the checkpoint processing area.

While agents were occupied processing detainees, Torres escaped from his handcuffs, fled the processing facility, entered his vehicle and started it. He was pursued out of the station by several Border Patrol agents. Agent Johnny Garcia opened the vehicle's driver's door and attempted to remove Torres from the vehicle, while a second agent, Cesar Cantu, reached through the driver's side rear door window and grabbed Torres around the neck. A third agent, Fredricks, fired a single round from his service weapon as Torres' vehicle proceeded in reverse. The bullet penetrated the front

---

[2] The factual background is from the Presentence Investigation Report ("PSR") at ¶¶ 4-12, 55.

windshield of the vehicle and a piece of shrapnel struck Torres in the right hand. Agent Cantu also received injuries to his hand as shards of glass from the windshield struck his left hand. As the vehicle accelerated at a high rate of speed in reverse, the driver's door struck Agent Garcia. Agent Garcia was then knocked to the ground and dragged by the vehicle door approximately 15 feet.

Also while the vehicle proceeded in reverse, the back window was raised, trapping Agent Cantu's arm. Torres continued to operate his vehicle in reverse until it collided with a vehicle parked in the primary inspection area ("the Green vehicle"), a vehicle whose passengers were an adult male, Glenn Green, and his three minor children, ages 16, 13, and 11. Mr. Green received a bump on his chin as a result of the collision, and there was extensive damage to the front end of his vehicle.

The collision caused Agent Cantu, still trapped by the rear window, to be thrown against the vehicle's rear quarter panel. At the time of the collision, another agent was able to pull Agent Garcia to safety. Agent Garcia received bruises and abrasions to his legs and arms. Upon admittance to the hospital, he complained of severe pain to his arms, legs, and back, he was given a pain reliever, treated for abrasions and contusions, and was hospitalized overnight. He missed two weeks of work as a result of his injuries.

After the collision with the Green vehicle, Torres placed his vehicle into drive and proceeded northbound to Highway 281. As the vehicle began to accelerate, Agent Cantu, whose arm remained trapped between the window and the door frame, placed his feet onto the sill of the open driver's side door in order to keep from being dragged. Torres veered the vehicle from side to side. Agent Cantu tried to control the vehicle, which had accelerated to 70 miles per hour, by grabbing the steering wheel with his left hand and by attempting to depress the emergency brake with his left foot. Agent Cantu believed that Torres was attempting to steer the vehicle off the highway at this point. Additionally, DPS trooper Lujan, who pursued Torres' vehicle as it left the checkpoint, testified at

trial that Torres was operating the vehicle erratically by swerving back and forth between the shoulders of the highway.

According to Agent Cantu, Torres leaned on his side and began kicking him in the chest. Believing that his life was in danger, Agent Cantu reached around the door frame with his trapped arm, and removed his sidearm from the holster on his right hip. Agent Cantu testified at the trial that he felt the defendant was steering the vehicle in an attempt to remove him from the vehicle by striking trees and shrubs in the highway medium. Agent Cantu fired one round from his service weapon, which entered through Torres' rib cage and lodged near his spine. The vehicle began to slow down and Trooper Lujan was able to catch up with Torres' vehicle. As the trooper pulled alongside Torres, Lujan testified that the vehicle was still swerving, and Lujan had to maneuver his vehicle to avoid a collision. After traveling approximately four-tenths of a mile from the checkpoint station, the vehicle rolled to a stop.

Agent Cantu suffered a bruised bicep, and was examined at the hospital, prescribed a pain reliever, and released after several hours. Torres was halo-flighted to Spohn Memorial Hospital in Corpus Christi, Texas, where he underwent surgery to repair his hand and to remove the bullet from his back.

**B.      Procedural Background**

Torres and a co-defendant, Jesika Garcia, were originally charged in a five-count indictment. On October 29, 2001, a superseding indictment was filed. The superseding indictment removed Garcia as a defendant, deleted one of the five original counts and amended one of the original counts. Specifically, the four-count superseding indictment charged Torres with: (1) transporting undocumented aliens within the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(B)(ii) and 18 U.S.C. § 2 (count 1s); (2) illegal re-entry following deportation, in violation

4

of 8 U.S.C. § 1326(a) and 1326(b)(1)(count 2s); (3) willfully and unlawfully attempting to kill an agent of the United States Border Patrol, Cesar Cantu, while that agent was engaged in the performance of his official duties, in violation of 18 U.S.C. §§ 1114 and 1113 (count 3s); and (4) knowingly assaulting an agent of the United States Border Patrol, Johnny J. Garcia, while that agent was engaged in the performance of his official duties, in violation of 18 U.S.C. 111(a)(1) and 111(b) (count 4s). (D.E. 62).

Torres pleaded guilty only to counts 1s and 2s, while counts 3s and 4s were tried before a jury on November 14, 15, 16, 19, and 20, 2001. (D.E. 78, 96, 98, 102-103, 111). On November 20, 2001, the jury returned a verdict of guilty as to count 3s, and a not guilty verdict on count 4s. (D.E. 114). Torres was sentenced by this Court on April 5, 2002. He was sentenced to 60 months in the custody of the Bureau of Prisons as to count 1s, 120 months as to count 2s, and 240 months as to count 3. Counts 1s and 3s were to be served consecutively, and the sentence on count 2s was to run concurrently with the sentences in counts 1s and 3s, except for 12 months to be served consecutively. The Court also imposed a three-year supervised release term on each count, to be served concurrently, and a $100.00 special assessment on each count. Torres was also ordered to pay a fine of $100.00 and restitution of $100.00 as to count 1s. (D.E. 141, 142).[3]

Torres timely appealed (D.E. 143), and the Fifth Circuit affirmed in a per curiam opinion issued June 19, 2003. (D.E. 162). Torres filed a petition for writ of certiorari with the Supreme Court, which was denied on March 8, 2004. Benitez-Torres v. United States, 541 U.S. 904, 124 S. Ct. 1599 (2004).

On April 14, 2005, the Clerk received from Torres his motion for relief pursuant to § 2255,

---

[3] As the Fifth Circuit explained in its affirming opinion, the combined sentence of 312 months was essentially an upward departure of four offense levels, or 77 months. (See D.E. 162 at 20). Benitez challenged that departure on appeal, but the Fifth Circuit affirmed. (D.E. 162).

which the Court deems filed on April 8, 2005.[4] (D.E. 166).

## III. MOVANT'S ALLEGATIONS

Torres' motion asserts four grounds for relief. First, he argues that he was denied his right to a unanimous jury verdict because the court failed to provide a definition of a "high rate of speed" when requested to do so by the jury. (D.E. 166 at p. 5). Torres claims that the fact that the Court's decision not to define "high rate of speed" for the jury means that the jury did not unanimously adjudicate whether he had the intent to murder.

Second, he claims that his sentence violated the rules set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), extended to the federal sentencing guidelines by United States v. Booker, 125 S. Ct. 738 (2005).[5] Specifically, he claims that the Court imposed a sentence beyond the statutory maximum allowed by the jury's verdict and enhanced his sentence based on findings of fact neither found by the jury or admitted by him.

Third, Torres argues that he was denied effective assistance of counsel due to both his trial and appellate counsel's failure to raise the arguments set forth in Torres' first and second, and fourth grounds for relief.

Fourth, he argues that the Court erred in instructing the jury that its verdict, whether guilty or

---

[4] Torres' motion was received by the Clerk's office on April 14, 2005. According to the motion, however, Torres executed it on April 8, 2005. That is the earliest date, therefore, that it could have been placed in the mailbox at his place of incarceration. Pursuant to Houston v. Lack, 487 U.S. 266, 276 (1988), the motion is deemed filed as of the earlier date. See also United States v. Young, 966 F.2d 164, 165 (5th Cir. 1992) (providing benefit of Houston v. Lack to *pro se* prisoner in § 2255 proceedings).

[5] In his reply, he argues that he is not relying on the Booker case, but instead that he was sentenced under an incorrect understanding of the rule in Apprendi. To the extent he is making a direct challenge under Apprendi, the understanding of the Court at the time of sentencing was correct and consistent with Fifth Circuit case law. To the extent he makes an Apprendi challenge, based on its interpretation in Blakely and Booker, he is not entitled to relief for the reasons set forth herein.

not guilty, must be unanimous. The charge to the jury specifically stated: "You have been instructed that your verdict, whether it is guilty or not guilty, must be unanimous." (D.E. 104 at 9; D.E. 151, November 19, 2001 Trial Tr. at p. 196 ). Torres claims that this instruction shifted the burden of proof and made the "presumption of innocence" fall by the wayside. The Court presumes that he is referring to the additional instruction it gave as part of the charge, in which it informed the jury that it had to unanimously find one of three methods by defendant in order to find him guilty of attempted murder. (D.E. 151, November 19, 2001 Trial Transcript at pp. 197-98). In that portion of the instruction, the Court did not offer as an option that the twelve jurors could unanimously agree that he is not guilty. He claims that this error was "structural" and requests a new trial.

In its original response and motion to dismiss, the government argued that Torres' motion should be dismissed in its entirety because it is untimely. In its supplemental response, the government further argues that the record shows Torres is not entitled to relief as to any of his substantive grounds. In his two replies, also considered by the Court, Torres argues that his motion should be deemed timely, both because his placement and various transfers kept him from accessing his legal papers, and because the BOP returned legal papers that were sent by his family. (D.E. 175). He also reiterates his claims and offers further argument in support of the substance of his claims. (D.E. 174).

As discussed in detail herein, Torres is not entitled to relief on any of his claims.

## IV.  DISCUSSION

**A.      Statute of Limitations**

The first and primary reason that Torres' motion fails is that it is untimely. A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when

7

the judgment becomes final.[6]  28 U.S.C. § 2255.  The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired.  Clay v. United States, 537 U.S. 522, 123 S. Ct. 1072, 1078-79 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000) (*per curiam*).

In this case, Torres filed a petition for writ of certiorari, which was denied on March 8, 2004.  His conviction became final on that date.   Torres' time period for filing a motion pursuant to 28 U.S.C. § 2255 expired a year after that date, or on March 8, 2005.  His motion is deemed filed as of April 8, 2005, and thus was filed approximately one month beyond the limitations period.  Accordingly, it is untimely.

In his original motion, Torres provides a detailed explanation as to why his motion is untimely, and appears to be arguing for equitable tolling.  Specifically, he argues that the Bureau of Prisons prevented him from receiving his "legal papers" while incarcerated.  He explains that he was placed in "S.H.U." at FCI Beaumont, Texas on July 16, 2004 and that the BOP lost his legal papers while he was in that placement.  He was then transferred to USP Pollock on October 25, 2004, and again was unable to obtain his legal papers there.  He claims that on January 2, 2005, he was transferred to USP Lewisburg and was finally returned to the general population on January 10, 2005.  He claims that his

---

[6] The statute provides that the limitations period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

family attempted to obtain and provide some of his legal papers to him, but that the BOP twice refused to accept them and sent them back. He claims that he was finally able to obtain the papers on March 25, 2005, and that he filed his motion shortly thereafter on April 8, 2005. In his reply, he continues to argue that his motion should be deemed timely filed, and reiterates many of his factual allegations concerning the BOP's purported attempts to frustrate his receiving his legal papers.

The government devoted the entirety of its initial response to arguing that Torres was not entitled to tolling and that his motion should be dismissed as time-barred. The government argues that, although Torres may not have had access to legal papers in the *inmate section* of the prison, he could have accessed legal papers through his case manager. Additionally, it points to a lack of any evidence that his transit between facilities or his placement precluded him from contacting his case manager. The government further argues that Torres has failed to explain how the issues he raises were unknown to him or not available for identification until after March 25, 2004. In short, the government contends that he is not entitled to tolling.[7]

The limitations period for § 2255 motions is subject to equitable tolling "only 'in rare and exceptional cases.'" United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002), cert. denied, 123 S. Ct. 2630 (2003) (quoting Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)). Equitable tolling is not required simply because a petitioner is unfamiliar with the legal process, is unrepresented, or is illiterate. Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999).[8]

---

[7] The government also claims that he did not file a request for his legal material with the BOP until after the deadline for filing his § 2255 motion had passed, which it claims shows that he did not act with due diligence. Torres' reply, however, contains a letter from a BOP official dated February 24, 2005 referencing a tort claim he had filed alleging a property loss at FCI Beaumont that allegedly occurred on October 26, 2004. Assuming the February 24, 2005 date is correct, it appears that Torres actually complained about the lost material prior to the expiration of the deadline for filing. (D.E. 175 at 5 & Exh. C). Nonetheless, he is not entitled to tolling for the reasons set forth herein.

[8] The Court cites herein to state habeas cases, as well as federal cases, which is appropriate in interpreting § 2255's limitations period and whether equitable tolling is warranted. Riggs, 314 F.3d at 799 & n.6.

9

The actions of the government can, in an appropriate case, be a basis for tolling. For example, in a Second Circuit case, the court found that equitable tolling could be warranted in a case where legal papers have been intentionally "confiscated." See Valverde v. Stinson, 224 F.3d 129, 133-34 (2d Cir. 2000) ("confiscation of a prisoner's legal papers by a corrections officer shortly before the filing deadline may justify equitable tolling"). In Valverde, the appellate court remanded for factual development on whether the intentional confiscation prevented the petitioner from filing his petition in a timely manner. See LaCava v. Kyler, 398 F.3d 271, 276 (3d Cir. 2005) (discussing Valverde).

The Fifth Circuit has not addressed the precise allegation by plaintiff, but addressed a similar issue in Fisher v. Johnson, 174 F.3d 710. In Fisher, the petitioner claimed that he was entitled to equitable tolling of seventeen days because he had spent that amount of time confined in a prison psychiatric ward. During that time, he was confined, medicated, and separated from his glasses, which rendered him legally blind and unable to work on his petition. 174 F.3d at 715. The Court held that he was not entitled to a seventeen-day tolling based on this confinement. It noted "the possibility that mental incompetency might support equitable tolling of a limitation period" and that, "[c]ombined with forced confinement and medication, no access to legal materials, and the temporary loss of one's glasses, a *pro se* petitioner ... simply cannot pursue his legal rights during such a period. " Id. Despite this, the Fisher court held that the petitioner was not entitled to equitable tolling, because the period was not a significant length of time and because he still had over six months after his release from the psychiatric ward to complete his petition. The court further stated that his argument would have more force if he had been in the psychiatric ward shortly before the required filing. Id. at 715-16.

At first blush, Fisher appears to provide some support to Torres' request for equitable tolling, particularly because Torres' claim is that he was denied access to his legal papers closer to his

10

deadline for filing. But the facts that the Fisher court were faced with are easily distinguishable from the instant case. In Fisher, the petitioner alleged not a mere lack of access to legal papers, but the possibility of mental incompetence, temporary blindness, forced confinement, and medication. The court viewed the Fisher petitioner's situation as rendering him unable to work on a petition at all. Here, all that Torres claims is that he did not have documents from his underlying criminal proceedings for a period of time. He does not show that this made him unable to work on his petition for any length of time. In short, his difficulty in obtaining the papers, without more, is simply not the type of "rare and exceptional" circumstance that would entitle him to tolling. See Riggs, 314 F.3d at 799.

Moreover, to the extent that Torres is claiming that his lack of access to his trial transcripts and PSI prevented him from filing his § 2255 motion, he misunderstands the law on this point. A statute of limitations may be tolled if the plaintiff demonstrates that essential information could not be found by diligent inquiry, but this applies to those who are unable to discover the factual predicates of their claims. Fisher, 174 F.3d at 715 & n.14. Indeed, this precise basis for tolling is included in AEDPA's statutory tolling provisions. See 28 U.S.C. § 2255 (limitations period runs from latest of four options, including "(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence"); see also note 6 supra, (setting forth entire text of provision).

In the instant case, however, Torres has failed to establish that he is entitled to statutory tolling under § 2255. As the government correctly notes, Torres' claims (and the factual predicates for them) were all known prior to the expiration of the one-year deadline for filing his motion. He was present at trial and throughout the criminal proceedings in this case, and he knew what his lawyer had done and not done. Additionally, he does not claim that he did not know of the issuance of Blakely and

11

Booker. Thus, he could have asserted his claims even without copies of his PSI and the copies of the trial transcripts or other pleadings. The fact that he had difficulty in obtaining these documents, or (as the government contends) that he failed to follow prison rules to obtain them, does not constitute grounds for tolling.

For all of the foregoing reasons, the Court concludes that Torres is not entitled to tolling. Because his motion is time-barred, and because Torres is not entitled to tolling, his § 2255 motion is DISMISSED. Moreover, even if his motion were timely, Torres' claims fail on their merits. as discussed in more detail in the remainder of this Order.

**B.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982).

**C.    Claim That the Jury Should Have Been Charged As to the High Rate of Speed**

Torres' first claim is that the Court erred in refusing to provide the jury with a definition for a "high rate of speed" when they requested one. As an initial matter, Torres did not challenge this failure at trial or on appeal. Thus, any direct claim that the Court erred is not properly before the

Court. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001) (where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000) (same). Even if he could overcome the procedural bar by showing "cause and prejudice," moreover, the claim fails on its merits.[9]

The jury had been instructed that, in order to convict Torres of count 3s, the attempted murder count, it had to unanimously find that the government proved one of the following three things beyond a reasonable doubt: (1) that Torres "drove away from the Falfurrias, Texas Border Patrol Checkpoint at a high rate of speed with Agent Cantu trapped on the exterior of the vehicle"; (2) that Torres "then kicked Agent Cantu with his feet"; or (3) that Torres "tried to steer the vehicle close enough to trees located in the median between the divided lanes of U.S. Highway 281 in order to hit and remove Agent Cantu from the side of the vehicle." (D.E. 104 at p.9).

While in the process of deliberating, the jury sent a note stating: "Please define 'high rate of speed.'" (D.E. 105) After consulting with the lawyers, the Court responded: "You have heard the evidence and received my instructions. Continue your deliberations." (D.E. 105; D.E. 151, November 19, 2001 Trial Tr. at pp. 208-210). Notably, Torres' counsel did not object, but in fact agreed with the Court's response. (Id.).

Torres now challenges the Court's refusal to define the term, but a court is not required to define every term for a jury, particularly where those terms are within the knowledge of the average juror. United States v. Roberts, 913 F.2d 211, 220 (5th Cir. 1990) (citing United States v. Beasley,

---

[9] A district court may consider a defaulted claim only if the petitioner can demonstrate either: (1) cause for his default and actual prejudice; or (2) that he is factually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999). Torres does not allege that he is factually innocent of the charged crime.

13

519 F.2d 233 (5th Cir. 1975), vacated on other grounds 425 U.S. 956 (1976)) (holding that the district court's refusal to define the word "purpose" was not erroneous and explaining that "the meaning of the phrase lies within the common understanding of jurors and needs no further elaboration"); United States v. Chenault, 844 F.2d 1124, 1131 (5th Cir. 1988) (terms within the "common understanding of a juror" do not require a definition).

Moreover, as noted supra, Torres' counsel did not object at trial, nor suggest that a definition be given. (D.E. 151, November 19, 2001 Trial Tr. at pp. 208-210). Thus, this objection would have been reviewed on direct appeal only for plain error. Chenault, 844 F.2d at 1131. For the reasons discussed above, there was no plain error. Additionally, the issue is not even properly before the court because Torres waived it when he failed to raise it on appeal. See Lopez, 248 F.3d at 433. Because the Court did not err in refusing to instruct the jury as to the meaning of a "high rate of speed," Torres' first ground for relief fails.

### D.   Claim Pursuant to Booker

Torres' second claim is that his Sixth Amendment rights were violated by the enhancements to his sentence. For support, he relies on the Supreme Court's decision in Booker,[10] but the Fifth Circuit has squarely held that Booker is not retroactively applicable on collateral review. United States v. Gentry, 432 F.3d 600, 605 (5th Cir. 2005). ("we join the several court of appeals that have held that Booker does not apply retroactively to initial § 2255 motions"). Thus, Booker does not provide a basis for relief to a defendant, such as Torres, whose conviction became final before the case was decided. Gentry, 432 F.3d at 603-04 & n.2. Accordingly, Torres' claim pursuant to Booker fails.

---

[10] But see supra note 5.

### E.     Error As To Supplemental Unanimity Instruction

Torres' fourth ground for relief is that the instructions to the jury regarding unanimity constituted reversible error. His motion is unclear as to what precise portion of the instructions he is challenging and, unfortunately, the government's response does not specify what it believes his challenge to be. Construing his motion liberally, the Court believes that he is challenging a portion of the charge in which the Court explained the different ways in which the defendant could be found guilty of attempted murder. Specifically, the charge stated:

> You've been instructed that your verdict, whether it is guilty or not guilty, must be unanimous. All 12 of you must agree. The following instructions apply to the unanimity requirement as to Count Three:
> Count Three of the Indictment accuses the Defendant of committing the crime of attempted murder in three different ways. The first is that the Defendant drove away from the Falfurrias, Texas Border Patrol Checkpoint at a high rate of speed with Agent Cantu trapped on the exterior of the vehicle. The second is that the Defendant then kicked Agent Cantu with his feet. The third is that the Defendant tried to steer the vehicle close enough to the trees located in the median between the divided lanes of U.S. 281 in order to hit and remove Agent Cantu from the side of the vehicle.
> The Government does not have to prove all three of these for you to return a guilty verdict on this charge. Proof beyond a reasonable doubt on one is enough. But in order to return a guilty verdict, all of you must agree that the same one has been proved.
> All of you must agree that the Government proved beyond a reasonable doubt that either the Defendant drove away from the Falfurrias, Texas Border Patrol Checkpoint at a high rate of speed with Agent Cantu trapped on the exterior of the vehicle, or all of you must agree that the Government proved beyond a reasonable doubt that the Defendant kicked Agent Cantu with his feet, or all 12 of you must agree that the Government proved beyond a reasonable doubt that the Defendant tried to steer the vehicle close enough to the trees located in the median between the divided lanes of U.S. 281 in order to hit and remove Agent Cantu from the side of the vehicle.

(D.E. 151, November 19, 2001 Trial Tr. at 196-97; D.E. 104 at pp. 9-10).

Taken out of context, the final paragraph of the foregoing could be read to require a unanimous

guilty verdict on one of three grounds (rather than giving the option to find him not guilty). In the absence of a clear and cogent argument from Torres as to what he is challenging, the Court presumes that this is what Torres challenges as error.[11]

Although the final paragraph, taken out of context, might appear to be erroneous, the charge as a whole is clear that jurors always had the option to unanimously find him not guilty. The charge is not misleading or erroneous when viewed as a whole. See United States v. Ramirez, 145 F.3d 345, 357 (even if one portion of the instruction is "imperfect," plain error is shown only if charge "as a whole, misled the jury or is an incorrect statement of law); Cupp v. Naughten, 414 U.S. 141, 146-47 (1975) (noting the "well established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge"). Thus, Torres' claim fails. Indeed, the jury found him not guilty as to count four, acquitting him of the conduct charged in that count. Thus, the jurors clearly understood that they had the option to find him not guilty. His claim has no merit.

Additionally, as with his first two claims, Torres did not object at trial or on appeal, nor has he shown "cause and prejudice" for his failure to do so. Thus, the claim is also procedurally barred from consideration here. Lopez, 248 F.3d at 433.

---

[11] To the extent he is actually challenging the portion of the verdict stating "You've been instructed that your verdict, whether it is guilty or not guilty, must be unanimous," the Court finds no error with this instruction. Indeed, it is nearly identical to the Fifth Circuit's pattern instruction, which says "To reach a verdict, whether it is guilty or not guilty, all of you must agree." Fifth Circuit Pattern Jury Instruction No. 1.24 (1997). Likewise, the instruction used by the Court is identical to language in a Sixth Circuit instruction regarding unanimity which includes the statement "Your verdict, whether it is guilty or not guilty, must be unanimous." Sixth Circuit Pattern Jury Instruction No. 8.03 (2005). Thus, the Court finds no error in this instruction and, in light of the other portions of the charge stressing the presumption of innocence, does not believe the instruction in any way shifted the burden of proof to Torres, as he claims.

**F.     Ineffective Assistance of Counsel**

    **1.     General Standards**

Claims of ineffective assistance of counsel are properly analyzed under the two-prong analysis set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>United States v. Willis</u>, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. <u>Id</u>. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. <u>U.S. v. Dovalina</u>, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. <u>Armstead v. Scott</u>, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), <u>cert</u>. <u>denied</u>, 514 U.S. 1071 (1995); <u>Carter v. Johnson</u>, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

    **2.     Torres' Claims of Ineffective Assistance**

Torres' third claim is that both his trial and appellate counsel were ineffective for failing to raise the arguments set forth in his first, second, and fourth grounds, already discussed above. As the Court concluded in the foregoing sections, his claims are meritless. Thus, there can be no prejudice from a failure to raise them. <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Because he cannot show prejudice, his ineffective assistance claim fails.

### G.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Torres has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (emphasis added); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to COA determination in context of § 2255 proceedings). As set forth above, Torres' motion does not establish either of these criteria. First, he has not stated a valid claim of the denial of a constitutional right. Second, reasonable jurists could not debate the denial of his § 2255 motion on procedural grounds. Under the plain record of this case, his motion is time-barred and he is not entitled to tolling.

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84). The Court concludes that reasonable jurists could not debate the denial of Torres' § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 123 S. Ct. at 1034 (citing Slack, 529 U.S. at 484, 120 S. Ct. at 1604).

For the foregoing reasons, Torres is not entitled to a COA.

## V.  CONCLUSION

For the above-stated reasons, the government's motion to dismiss (D.E. 169) is GRANTED, and Torres' motion under 28 U.S.C. § 2255 (D.E. 166) is DISMISSED as time-barred and for failure to state a claim. The Court also DENIES Torres a Certificate of Appealability.

ORDERED this 13th day of February, 2006.

_____
Janis Graham Jack
United States District Judge